STARK et al., Appellants, v. HICKLIN, Respondent.

St. Louis Court of Appeals, May 2, 1905.

1. **VENDOR AND PURCHASER:** Lien: Notice. A contract, which by its terms made the purchase price of fruit trees a lien upon the land on which they were planted, was valid and when recorded imparted notice to the vendee of the owner who had contracted for the trees.

2. ———: ———: Defenses. In an action to enforce a lien against land, in accordance with a contract for the purchase price of fruit trees planted thereon, a subsequent purchaser of the land cannot defend on the ground that the trees furnished were not according to contract, where his vendor, the purchaser of the trees, received and kept them for eight years without complaint.

3. ———: ———: Personal Judgment. In such an action, a personal judgment could not be rendered against the vendee, where he was not shown to have assumed the payment of the lien debt.

**4. PRACTICE:** Instrument Sued On: Verified Answer. In an action upon a written instrument, the execution of which is not put in issue by a verified answer, evidence was inadmissible to show the instrument was not executed.

Appeal from Dent Circuit Court.—*Hon. Leigh B. Woodside*, Judge.

REVERSED AND REMANDED (*with directions*).

*A. H. Harrison* and *Pearson & Pearson* for appellants.

The fact that Fowler accepted the trees, and planted them, and many of them are at this time alive, is conclusive evidence that there was no want of, or failure of, consideration. It is only when an article is entirely worthless when purchased that there is a total failure of consideration. Comings v. Leady, 114 Mo. 454, 21 S. W. 804; Brown v. Weldon, 27 Mo. App. 251; Brown v. Weldon, 99 Mo. 564, 13 S. W. 342.

*Wm. P. Elmer* for respondent.

The contract is a personal one, between plaintiffs and Fowler, and does not constitute a lien upon the lands so as to charge defendant. There is no conveyance of the legal title so as to constitute this instrument a mortgage. Vanstone v. Goodwin, 48 Mo. App. 46. Goods purchased for a known purpose must be reasonably fit for that purpose and if not there is a failure of consideration. There was this implied warranty, and if the trees were unfit and of no value for orchard purposes, then there was an entire failure of consideration which the jury found. This evidence tended to prove such failure. Brewing Ass'n v. McEnroe, 80 Mo. App. 431; Lee v. Saddlery Co., 38 Mo. App. 202; Keestone Imp. Co. v. Leonard, 40 Mo. App. 478; Creasy v. Gray, 88 Mo. App. 454. This is true of all classes of property, seeds, trees, etc. Johnson v. Sproull, 50 Mo. App. 122.

And this is especially true where goods are grown or manufactured by the seller. 15 Am. and Eng. Enc. Law (2 Ed.), pp. 1231-1237. None of this testimony was objected to by plaintiffs. A general objection was made as "irrelevant, incompetent and immaterial," which is equivalent to no objection. Peck v. Chouteau, 91 Mo. 138, 3 S. W. 577; Roe v. Bank, 167 Mo. 406, 67 S. W. 303.

STATEMENT.

This action was founded on the following deed:

"This indenture made and entered into on this 25th day of November, A. D. 1891, by and between N. B. Fowler, (P. O. Salem, Miles 3 1-2, Direction S. W.) of the county of Dent and State of Missouri, party of the first part, and C. M. Stark, E. W. Stark and W. P. Stark, or their assigns, doing an orchard business under the firm name of Stark Bros., at Louisiana, in the county of Pike and State of Missouri, parties of the second part:

"Witnesseth: that the said party of the first part in consideration of the second parties furnishing to him nine hundred and eighteen (918) fruit trees, said trees to be furnished November 25, 1891, as per order given us by said first party, binds himself to plant in the usual and customary manner, to take good care of same, and give good attention to them, said trees to be planted and set out on his farm containing four hundred acres (400) situated in Dent county, State of Missouri, and more particularly described as follows, to-wit:

"South one-half of southeast quarter and south half of southwest quarter section 27, township 34, range 6 and northeast quarter of northwest quarter and northeast quarter section 34 and southwest quarter of northwest quarter of section 35, township 34, range 6, for which said first party binds himself and his heirs to pay the said second parties the sum of one hundred and twenty and sixty-five one-hundredths ($120.65) dollars, due and payable as follows: one-half of the gross amount

of the sales from the crop each year said first party agrees to remit, which is to be credited hereon from year to year until the full amount, together with six (6) per cent compound interest shall be paid, and the final payment shall be made within ten (10) years from date, regardless of the amount paid from year to year, if the amount shall not be paid prior thereto.

"And it is also understood and agreed by said first party, by his heirs and assigns, that this shall be a lien upon the above described premises or real estate until the full amount together with interest, shall be paid, and should said first party fail to pay the amount together with interest, said real estate shall be subjected to the payment of the above amount, and the said first party for the purpose of obtaining this loan states that the above property is free and clear of encumbrance and that he claims the same with a perfect title.

"In witness whereof, we have hereunto set our hands and seals the day and year last aforesaid. Witnessed by,

"N. B. FOWLER    '(Seal)'

"STARK BROS.    '(Seal)"

That instrument was duly acknowledged by Fowler before a notary public November 25, 1891, and was recorded in the office of the recorder of deeds of Dent county December 4, 1891, at nine o'clock, a. m. This suit is to recover the balance due the plaintiff for the fruit trees sold and delivered to Fowler and to enforce the lien of the above instrument on the lands therein described. Eight years after Fowler bought the trees in controversy, during which years they constituted an orchard on his farm and were used and cultivated by him, the defendant, Wade Hicklin, bought the land from Fowler and is now the owner of it. For that reason he is made a party defendant. His answer sets up these defenses: first, a general denial; second, that he bought the land as described in the petition in 1898 for a valu-

able consideration without knowledge or notice of plaintiff's claim, but in ignorance of it. The third defense is as follows:

"That it was represented to said N. B. Fowler that all of said trees were fresh from the nursery and of the winter variety and all of the kind sought to be purchased by said N. B. Fowler, and that they were not old trees that had been out of the nursery for a long time but were first-class trees and fit for the purpose of planting into an orchard for commercial use. That in truth and in fact said trees were a lot of different varieties, and had been in storage until the greater part of them were dead. That they were not fit for planting for use as bearing fruit trees and were not first-class trees; that they had been in storage a long time; that said N. B. Fowler planted and cared for said trees in a husbandlike manner. That in the year 1892 three hundred of said trees died because of the defects of the same. That said trees have been properly cared for by said N. B. Fowler and this defendant, but owing to the bad quality of the same and the long continued storage and exposure by the agent of plaintiff, all of said trees have died except three hundred. That said trees were and are 'scrub stock,' and have not and will not grow into a healthy bearing tree. That there is not to exceed two hundred healthy trees of a reasonable size for their age in said lot. That they were not reasonably fit for the purpose of planting for said orchard; that said trees are of all varieties not ordered by said N. B. Fowler and there was no manner or method of telling the kind of tree it would be at the time of the purchase. That said plaintiffs were the growers of said trees and knew the kind they were selling to said N. B. Fowler and knew that the varieties sold to him were not the kind he had ordered and that said trees were not fresh and good stock and were not worth $120 and were not reasonably worth more than $25. That said trees had been in storage for a long time, all of which was unknown to defendant or said N. B.

Fowler. Defendant states that the plaintiffs were the growers of said trees and knew of the kind and quality of said trees and knew that said Fowler was purchasing said trees to plant into an orchard for the particular purpose of having the same bear apples.

"That said trees were not worth the sum of $120.65 and never were worth the said sum and are not reasonably worth anything for the purpose for which said N. B. Fowler purchased them. That all of said trees are entirely worthless for any purpose than that for which they were purchased, and said two hundred living are not reasonably fit for the purpose of an orchard and the said lands have not been enhanced in value by said trees being set thereon.

"That said N. B. Fowler is now dead and his widow is yet living and is fifty years of age and the defendant is the owner of the dower interest of said widow and she did not sign said contract."

The fourth defense is that the instrument sued on was not the contract executed by Fowler, but that said instrument had been changed since it was signed by Fowler without Fowler's or the defendant's knowledge or consent. What is meant in this connection is that the words "Stark Bros." were not originally affixed to the indenture, but were written subsequent to the execution of the instrument, which at first was signed "Stark Bros. Nursery Co., Will S. Morrison, Agent."

The fifth defense is that said instrument was not signed and acknowledged by anyone who was a member of the firm of Stark Bros, and does not purport to be. The sixth defense is that at the time of the execution of the deed one W. R. Love held a deed of trust on the land for $1,500 executed in 1882 and renewed in 1892 for the same indebtedness; that Nannie Hicklin, the wife of the defendant, had paid off and discharged that mortgage to the amount of $1,500 with the understanding that she was to be repaid by the defendant; that she was not repaid and is entitled to be subrogated to the rights of said

Love in and to the said deed of trust and have the same declared a first lien in her favor on said lands and prior to the plaintiff's lien, and that she is a necessary party to the determination of this case. A seventh defense is in the nature of a counterclaim and is stated as follows:

"Defendant further states that had said 918 trees been of the kind and quality contracted for by said N. B. Fowler and as represented by plaintiffs, that the present value of said farm, whereon same were planted, would be enhanced by $1,500. That by reason of said trees being of inferior quality and in such bad condition and not of the kind ordered by said N. B. Fowler and the great number of said trees dying and not being fit for commercial orchard, and not being first class trees and being held in storage so long a time, were not reasonably fit for planting and use as bearing commercial trees and not reasonably fit for the purpose for which they were purchased and the defendant has been damaged in the sum of $1,500, by reason thereof, he having spent sums of money in cultivating and caring for said trees and said farm not being worth by $1,500 what it would have been if said trees had been reasonably fit for the purpose intended; wherefore defendant prays that the value of said trees be fixed at $—— and that he have judgment for the sum of $1,500, the damages sustained by him in the premises and for other proper relief."

A portion of that answer was struck out. To the remainder a replication was filed, putting its allegations in issue. We cannot indicate particularly what part was struck out; for the record is ambiguous on the point, but we understand it was the sixth and seventh defenses.

There was a jury trial and a verdict for the defendant. Various instructions were given by the court which need not be noticed.

GOODE, J. (after stating the facts).—On reading the record one is forcibly impressed by its utter barren-

ness of any evidence to support either of the ingenious defenses pleaded in the answer. Not a syllable of evidence was put in to prove that any representations were made to Fowler as to the variety of the trees he bought; how recently they had been taken out of the ground or any other false representation or warranty. On the contrary the undisputed evidence shows that Morrison, agent of Stark Bros., had been selling trees in the neighborhood where Fowler lived and had this batch of trees left on his hands at the close of the season. He offered them to Fowler at a bargain and Fowler bought them after a full inspection. In fact they were in his possession some time before the contract in suit was executed. Fowler planted the trees on his land and cultivated them for several years before he sold the farm to Hicklin. Six letters written by Fowler beginning with one dated December 13, 1891, and ending with one dated January 25, 1898, were put in evidence. In the first of these letters he asked a credit of $12.06 on his account, or ten per cent of his purchase, because he had helped Morrison, the agent, by taking the trees off his hands after the original purchasers (twenty-one different men, the letter says) had failed to take them. It seems this credit was allowed by the plaintiffs. That was shortly after the trees were purchased and in the letter Fowler spoke well of them and was jubilant over his prospective success in raising an orchard. Each of the letters was in reference to payments on the debt Fowler owed for the trees; and either proffered excuses for not paying or told about the failure of crops and promised when he would pay. We will copy the last two letters:

"Paragould, Arkansas, January 8, 1898.
"Stark Bros. N. & O. Co., Louisiana, Missouri.
"Gentlemen:

Your favor dated Dec'r 1, '97 but postmarked January 1st, just received, having been forwarded from my home, Salem, Mo., to me here. The October statement I did not receive, probably lost in the forwarding.

. "Well, I should say our crop was a failure. My wheat averaged about 4 bu. to the acre. I am down here trying to make something this winter so as to endeavor to make both ends meet. I will return home the first of next month.

"It is simply impossible for me to pay anything now, and you will greatly oblige me by accepting my note at two (2) years. Please draw one up and mail to me here care Hotel Loda and I will sign and return. All I want is time and will pull through.

"The No. of my orchard contract is 688.

"I am glad you did not place my acct. with a Collection Co. Kindly forward the note at once, and oblige,

"Yours,

. "N. B. FOWLER."

"Malden, Missouri, January 25, 1898.
"Stark Bros.
        "Louisiana, Missouri.
"Gentlemen:

"Sometime ago I replied to your favor of Dec. 1st, last and expected an answer before this but none came.

"My home is at or near Salem, Mo., and I have an orchard on the 6 per cent plan. Now, owing to short crops and my trees not yet bearing I have not been able to pay any interest. You will do me a favor by allowing me to give you my note, for the interest, as you proposed in your letter. I am down here in the capacity of an agent for an oil mill and I will be all right after a while, I only want time. I would sell my farm if you can send me a buyer.

"I am going home to Salem the first of February, and will be at home all summer.

"Will be glad to hear from you, on receipt of this, at Paragould, Ark., care Hotel Loda.

"Yours truly,
                "N. B. FOWLER.
"My No. is 688."

It is thus perfectly apparent that Fowler, with

whom plaintiffs made the contract, never thought he had been imposed on or defrauded, or that the trees were in any way below what they had been represented to be. In fact, while there is some testimony against the character of the trees, the undisputed testimony shows that two hundred or more of them are alive and thrifty now. The instrument sued on constituted a lien, which was on the land when the defendant, Hicklin, bought the farm from Fowler. The instrument was recorded and imparted notice to him. We know of no rule of law by which Hicklin can set up that the trees were worthless, the original purchaser having kept them eight years without complaint. Hicklin's main defense is that Fowler was imposed on and, therefore, the lien cannot be enforced against the land. The person to complain of that grievance was Fowler. Hicklin bought the land subject to the lien for the purchase price of the trees and cannot resist its enforcement. The deed Fowler made to him is not in evidence to show whether he personally assumed payment of the debt to the plaintiffs or not. Unless he did there can be no personal judgment entered against him. There is no defense to this action so far as plaintiffs' enforcement of the lien against the land is concerned. The execution of the instrument sued on was not put in issue by a verified answer; but nevertheless the court, over plaintiffs' objection, allowed a witness to testify that Stark Bros. name was not signed to it originally, but was added afterwards. This evidence was wholly inadmissible and very prejudicial.

The judgment is reversed and the cause remanded with a direction to the court below to enter a decree for the plaintiffs enforcing the lien against the estate in the lands described, which was conveyed by Fowler to the defendant Hicklin. All concur.